## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **TRACEY BRUNER**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**KERBER, ECK, & BRAECKEL, LLP**,<br><br>        Defendant. | Case No. 3:24-cv-3295<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**DEMAND FOR JURY TRIAL** |

Tracey Bruner ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Kerber, Eck, & Braeckel, LLP ("Kerber" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

### NATURE OF ACTION

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Defendant is a mid-sized accounting and consulting firm with eight offices in the Midwest that serve clients throughout the nation.[1]

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") about its current and former clients (and their current and former customers and patients). But

---

[1] About, LinkedIn, https://www.linkedin.com/company/kerber-eck-and-braeckel/about/ (last visited October 21, 2024).

Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      Upon information and belief, cybercriminals had access to Defendant's network for an entire 12 days before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former clients' (and their current and former customers' and patients') Private Information.

5.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

6.      On or around March 17, 2023–almost two months after the Data Breach first occurred– Kerber finally began notifying Class Members about the Data Breach ("Breach Notice"). A copy of Plaintiff's Breach Notice is attached as Exhibit A and Defendant's website Notice of the Cyber Security Event is attached as Exhibit B.

7.      Plaintiff is a Data Breach victim. She brings this class action on behalf of herself, and all others harmed by Defendant's misconduct.

8.      The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former clients' (and their current and former customers' and patients') private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

9.     Plaintiff, Tracey Bruner, is a natural person and citizen of Illinois. She resides in Oblong, Illinois where she intends to remain.

10.     Defendant, Kerber, Eck, & Braeckel, LLP, is a limited liability partnership formed under the laws of Illinois and with its principal place of business at 322 Robbins Road, Suite 200A, Springfield Illinois 62704.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Class Member and Defendant are citizens of different states. And there are over 100 putative Class members.

12.     This Court has personal jurisdiction over Defendant because it is headquartered in Illinois, regularly conducts business in Illinois, and has sufficient minimum contacts in Illinois.

13.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

14.     Defendant "provides a full range of accounting, tax and management consulting services" to "large and small clients in the Midwest and throughout the nation."[2]

15.     As part of its business, Defendant receives and maintains the Private Information of its current and former client organizations (and their current and former customers and patients).

---

[2] *Id.*

16.     In collecting and maintaining the Private Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Private Information.

17.     Under state and federal law, businesses like Defendant have duties to protect its current and former clients' (and their current and former customers' and patients') Private Information and to notify them about breaches.

18.     Defendant recognizes these duties, declaring in its "Privacy Policy" that "protecting the confidentiality of that information has been, and will continue to be, a top priority for the Firm" and that Defendant:

   a.     "takes your privacy very seriously;"

   b.     "share[s] a commitment to protect your privacy and the confidentiality of your personal financial information;" and

   c.     "applies professional standards of confidentiality that are even more stringent than those required by law."[3]

**Defendant's Data Breach**

19.     On February 7, 2023, Defendant "became aware of suspicious activity on its computer network." Ex. A.

20.     Following the Data Breach, Defendant conducted an investigation that revealed "that an unauthorized actor accessed its' network between January 27 and February 7, 2023, and viewed or copied certain files stored on its' network." Ex. A.

---

[3] Privacy Policy, Kerber, https://www.kebcpa.com/privacy-policy/ (last visited October 21, 2024).

21.    On or around March 17, 2023–nearly two months after the Data Breach first occurred– Kerber finally began notifying Class Members about the Data Breach.

22.    Kerber took seven weeks before informing Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

23.    Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its clients how many people were impacted, how the breach happened, and why it took Defendant until March 17, 2023, to begin notifying victims that hackers had gained access to highly sensitive Private Information.

24.    Upon information and belief, the Breach impacted 2,948 individuals. And upon information and belief, this includes Defendant's current and former clients (and their current and former customers and patients).

25.    The Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former employees' highly personal information, including:

      a.    Name;

      b.    Address;

      c.    Date of birth;

      d.    Social Security number;

      e.    Financial account information;

f.   Medical information (including but not limited to Diagnosis, Diagnosis Code, Mental/Physical Condition, Prescription information, and provider's name and location);

g.   Health insurance information (including but not limited to beneficiary number, subscriber number, Medicaid/Medicare identification); and/or

h.   Billing and Claims information (including but not limited to patient account number, patient identification number, and treatment cost information).

26.    Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendant caused widespread injury and monetary damages.

27.    On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

28.    Because of Defendant's Data Breach, the sensitive Private Information of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

29.    In response to the Data Breach, Defendant contends that it has "implemented an advanced threat detection and response tool throughout our network and are reviewing existing policies and procedures related to data security." Ex. B. Although Defendant fails to expand on what this alleged "threat detection tool" is, such measures should have been in place before the Data Breach.

30.    Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant

against incidents of identity theft and fraud by reviewing account statements, explanation of benefits statements, and monitoring free credit reports for suspicious activity and to detect errors." Ex. B.

31.    Worryingly, the cybercriminals that obtained Plaintiff's and Class members' Private Information appear to be the notorious ransomware group "ALPHV," also known as "BlackCat."[4]

32.    ALPHV claims to have exfiltrated 309GB of data from Defendant, including "Internal Company Data (Employees personal data, CV's, DL's, ID's, SSN's, Financial reports, accounting data, Loans data, Insurance, Agreements and much more); Client's documentation (DL's, ID's, SSN's, Financial data, Credit cards information, Loans data, Agreements and much more); Complete network map including credentials for local and remote services."[5]

---

[4] https://hackmanac.com/news/hacks-of-the-day-09-02-2023 (last visited October 21, 2024).
[5] *Id.*

| Victim website: | kebcpa.com |
| --- | --- |
| Victim country: | USA |
| Attacker name: | BlackCat/ALPHV |
| Attacker class: | Cybercrime |
| Attack technique: | Ransomware |
| Ransom demand: | N/A |
| Exfiltrated data amount: | 309 GB |
| Exfiltrated data type: | Internal Company Data (Employees personal data, CV's, DL's, ID's, SSN's, Financial reports, accounting data, Loans data, Insurance, Agreements and much more); Client's documentation (DL's, ID's, SSN's, Financial data, Credit cards information, Loans data, Agreements and much more); Complete network map including credentials for local and remote services. |
| Leaked data: | / |
| Ransom deadline: | N/A |
| Cyber Risk Factor: | 4 |

33.     In fact, the Federal Bureau of Investigation (FBI) and the Cybersecurity and Infrastructure Security Agency (CISA) released a joint advisory warning the public about ALPHV. Specifically, the joint "Cybersecurity Advisory" (CSA) stated, *inter alia*, that:

a.     "After gaining access to a victim network, ALPHV Blackcat affiliates deploy remote access software such as AnyDesk, Mega sync, and Splashtop in preparation of data exfiltration."

b.     "ALPHV Blackcat affiliates create a user account, "aadmin," and use Kerberos token generation for domain access."

c.     "ALPHV Blackcat affiliates use the open source adversary-in-the-middle attack framework Evilginx2, which allows them to obtain multifactor authentication (MFA) credentials, login credentials, and session cookies.

The actors also obtain passwords from the domain controller, local network, and deleted backup servers to move laterally throughout the network".

d.  "Some ALPHV Blackcat affiliates exfiltrate data after gaining access and extort victims without deploying ransomware. After exfiltrating and/or encrypting data, ALPHV Blackcat affiliates communicate with victims via TOR, Tox, email, or encrypted applications. The threat actors then delete victim data from the victim's system."[6]

34.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[7]

35.    Thus, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

36.    Plaintiff Tracey Bruner is a patient of Harrisburg Medical Center which is a client of Defendant.

37.    Thus, Defendant obtained and maintained Plaintiff's Private Information. And as a result, Plaintiff was injured by Defendant's Data Breach.

38.    Plaintiff (or her third-party agent) provided her Private Information to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's

---

[6] Cybersecurity Advisories, CISA, https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-353a (last visited October 21, 2024).

[7] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

39.     Plaintiff (or her third-party agent) reasonably understood that a portion of the funds paid to Defendant for services would be used to pay for adequate cybersecurity and protection of Private Information.

40.     Upon information and belief, through its Data Breach, Defendant compromised Plaintiff's Private Information, including her name, date of birth, medical record number, and treatment information. And upon information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

41.     Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

42.     Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

43.     Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

44.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property— property that Defendant was required to adequately protect.

45.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

46.    Indeed, following the Data Breach, Plaintiff began experiencing a substantial increase in spam and scam phone calls purporting to be medical-related, suggesting that her Private Information has been placed in the hands of cybercriminals.

47.    On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's Private Information that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.

48.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

49.    Today, Plaintiff has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

50.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

      a.    loss of the opportunity to control how their Private Information is used;

      b.    diminution in value of their Private Information;

      c.    compromise and continuing publication of their Private Information;

     d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

     e.     lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

     f.     delay in receipt of tax refund monies;

     g.     unauthorized use of their stolen Private Information; and

     h.     continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

51.    Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

52.    The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

53.    It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

54.    One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and

combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

55.    The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

56.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

57.    Defendant disclosed the Private Information of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

58.    Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

59.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

60.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[8]

61.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[9]

62.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

63.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[8]  *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[9] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

64.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[10]  The FTC declared that, *inter alia*, businesses must:

    a.     protect the personal customer information that they keep;

    b.     properly dispose of personal information that is no longer needed;

    c.     encrypt information stored on computer networks;

    d.     understand their network's vulnerabilities; and

    e.     implement policies to correct security problems.

65.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

66.     Furthermore, the FTC explains that companies must:

    a.     not maintain information longer than is needed to authorize a transaction;

    b.     limit access to sensitive data;

    c.     require complex passwords to be used on networks;

    d.     use industry-tested methods for security;

    e.     monitor for suspicious activity on the network; and

    f.     verify that third-party service providers use reasonable security measures.

67.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[10] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

68.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former clients' (and their current and former customers') data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

69.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

70.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

71.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

72.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**Defendant Violated HIPAA**

73.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [11]

74.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI and PHI is properly maintained. [12]

75.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.    failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[11] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[12] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

c.  failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

76. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

77.   Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach discovered by Kerber, Eck, & Braeckelin February 2023, including all those individuals who received notice of the breach.

78.   Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

79.   Plaintiff reserves the right to amend the class definition.

80.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

81.   <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

82.   <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 2,948 members.

83.   <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

84. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

85. <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

    a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

    b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendant were negligent in maintaining, protecting, and securing Private Information;

    d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

    e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.    if Defendant's Breach Notice was reasonable;

    g.    if the Data Breach caused Plaintiff and the Class injuries;

    h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

86.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

87.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

88.    Plaintiff and the Class (or their third-party agents) entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

89.    Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry

standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

90.     Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

91.     Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' Private Information.

92.     Defendant owed—to Plaintiff and Class members—at least the following duties to:

      a.     exercise reasonable care in handling and using the Private Information in its care and custody;

      b.     implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

      c.     promptly detect attempts at unauthorized access;

      d.     notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their Private Information.

93.     Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

94.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

95.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

96.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

97.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class members' Private Information.

98.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive Private Information.

99.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the

foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

100.    Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class members' PHI.

101.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

102.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

103.    Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

104.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

105.    Defendant breached these duties as evidenced by the Data Breach.

106.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' Private Information by:

a.    disclosing and providing access to this information to third parties and

b.    failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

107.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

108.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

109.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

110.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

111.    And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

112.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their

bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

113.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

114.    Plaintiff and Class members either directly contracted with Defendant or Plaintiff and Class members were the third-party beneficiaries of contracts with Defendant.

115.    Plaintiff and Class members (or their third-party agents) were required to provide their Private Information to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class members (or their third-party agents) provided their Private Information to Defendant or its third-party agents in exchange for Defendant's services.

116.    Plaintiff and Class members (or their third-party agents) reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

117.    Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

118.    Plaintiff and the Class members (or their third-party agents) accepted Defendant's offers by disclosing their Private Information to Defendant or its third-party agents in exchange for services.

119.    In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

120.    In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's Private Information.

121.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

122.    After all, Plaintiff and Class members (or their third-party agents) would not have entrusted their Private Information to Defendant (or their third-party agents) in the absence of such an agreement with Defendant.

123.    Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

124.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

125.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

126.    Defendant materially breached the contracts it entered with Plaintiff and Class members (or their third-party agents) by:

a.    failing to safeguard their information;

b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.    failing to comply with industry standards;

d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.    failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

127.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

128.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

129.    And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

130.    Plaintiff and Class members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

132.    This claim is pleaded in the alternative to the breach of implied contract claim.

133.    Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their Private Information to facilitate its business, and (2) from accepting their payment.

134.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents).

135.    Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

136.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Private Information.

137.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

138.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' payment because Defendant failed to adequately protect their Private Information.

139.    Plaintiff and Class members have no adequate remedy at law.

140.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

141.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

142.    Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' Private Information; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

143.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their Private Information.

144.    Because of the highly sensitive nature of the Private Information, Plaintiff and Class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their Private Information had they known the reality of Defendant's inadequate data security practices.

145.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' Private Information.

146.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

147.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**FIFTH CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ICLS 505/1, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

148.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

149.    This claim is brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

150.    Plaintiff and Class members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

151.    Plaintiff, the Class, and Defendant are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

152.    The ICFA applies to Defendant because Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendant engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

153.    Defendant violated ICFA by, *inter alia*:

   a.    failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' Private Information, which was a direct and proximate cause of the Data Breach;

   b.    failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

   c.    failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' Private Information,

including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15

U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a

direct and proximate cause of the Data Breach;

d.    omitting, suppressing, and concealing the material fact that it did not

reasonably or adequately secure Plaintiff's and Class members' Private

Information; and

e.    omitting, suppressing, and concealing the material fact that it did not

comply with common law and statutory duties pertaining to the security and

privacy of Plaintiff's and Class members' Private Information, including

duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. §

1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

154.    Defendant's omissions were material because they were likely to deceive

reasonable consumers about the adequacy of Defendant's data security and ability to protect the

confidentiality of their Private Information.

155.    Defendant intended to mislead Plaintiff and Class members and induce them to rely

on its omissions.

156.    Had Defendant disclosed to Plaintiff and Class members (or their third-party

agents) that its data systems were not secure—and thus vulnerable to attack—Defendant would

have been unable to continue in business and it would have been forced to adopt reasonable data

security measures and comply with the law. Defendant accepted the Private Information that

Plaintiff and Class members (or their third-party agents) entrusted to it while keeping the

inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class

members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

157.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

158.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

159.    And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

160.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

161.    Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiff and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

162.    Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiff and the Class of the nature and extent of the Data Breach pursuant to the Illinois Private Information Protection Act, 815 ILCS 530/1, *et seq*.

163.    Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendant's violations of the ICFA.

### SIXTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

164.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

165.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

166.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

167.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

      d.     Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

168.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

169.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

170.    And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiff and Class members' injuries.

171.    If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

172.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

    A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

    B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.      Enjoining Defendant from further unfair and/or deceptive practices;

E.      Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: October 21, 2024              By:  */s/ Raina C. Borrelli*
                                          Raina C. Borrelli
                                          Samuel J. Strauss*
                                          STRAUSS BORRELLI PLLC
                                          One Magnificent Mile
                                          980 N Michigan Avenue, Suite 1610
                                          Chicago IL, 60611
                                          Telephone: (872) 263-1100
                                          Facsimile: (872) 263-1109
                                          raina@straussborrelli.com
                                          sam@straussborrelli.com

                                          *Pro Hac Vice forthcoming*
                                          *Attorneys for Plaintiff and the Proposed Class*